Good morning, your honors. May it please the court, Chris Shuler for the appellant. Your honors, the issue before the court is whether an unsecured creditor may recover its post-petition legal fees from a bankruptcy debtor pursuant to a pre-petition contract. And I think the starting point for the analysis can be found in the United States Supreme Court decision in Travelers. There, the court noted that an unsecured claim is allowed unless one of nine exceptions, which are outlined in Section 502B of the Bankruptcy Code, are applicable. And in that case, the court held that none of these exceptions include a creditor's legal fees. And so in that case, the court held that a creditor can recover its post-petition legal fees. Nothing in Section 502 prohibits this recovery. But the Supreme Court did refuse to rule on whether Section 506B of the Bankruptcy Code changes this analysis in any way. Well, as to the 506B, correct me if I'm wrong, all that section says it's designed to do is to determine what is a secured claim and what is an unsecured claim. Is it that simple? It is that simple, your honor, and in fact four circuit courts have said exactly that. The 2nd, 5th, 9th, and 11th. And actually in DICTA, in another case, the First Circuit has said the exact same thing. So it is as simple as that, your honor, and no circuit court has ruled to the contrary. So if 506 doesn't apply, then all you've got to go to is 502. Correct, sir. And in those circuit court decisions, they also note in support of their holdings that nothing in 506B states that a claim which falls out of 506B is not allowable under 502. And what these circuit courts have said is that means 506 is never intended to displace 502. They are separate. 506 deals with what's a secured claim, 502 deals with what claim is allowed or not. Now, there are some lower court decisions which have ruled differently and in essence the argument by those courts is 506B is silent as to a recovery of legal fees by an unsecured creditor, but all the circuit courts have said that's the wrong analysis. And on top of that, if you look at the traveler's decision, those lower court decisions are inconsistent with travelers. In travelers, the United States Supreme Court said a court must assume state law claims are allowed unless expressly disallowed by the bankruptcy code. And silence is not an express disallowance. Now here, the appellee has raised another argument in its opposition papers and that argument is that a claim is fixed as of the petition date and therefore if legal fees are not accrued as of the petition date, the legal fees cannot be included in the claim. And this argument is wrong and it has been expressly addressed by the Ninth Circuit in the SNTL case, the Eleventh Circuit in Wellesley, and the Second Circuit in Oakley. There, those courts addressed the exact same argument and said a claim under the bankruptcy code is defined to include contingent and unliquidated claims. And so the way those courts treated an attorney's fees claim is that they are pre-petition claims that are fixed in amount post-petition. Finally, Your Honors, I don't think you need to get into the public policy here because I think the bankruptcy code is clear, but I will note that in the 804 Congress decision, the Fifth Circuit addressed public policy as did the Ninth Circuit in the SNTL decision. And they noted that the superior public policy here is the preservation of contract rights under state law. And procedurally, there is a state law claim against this, against enforcement, but that's just sort of sitting on hold now. Nobody has ruled on it. So if this case were to go forward, the bankruptcy court would take that up first? Correct. Is, just another procedural question, is the debtor here solvent? Is there a suggestion along those lines before the bankruptcy court? Is everyone going to get paid? No, they are at the point in the proceeding where there's just going to be partial payments on unsecured claims. Now, I didn't detect that you're asking us to get into the reasonableness of the case. Correct. That should be resolved on remand. Anything else? Thank you, Your Honors. We have some time to develop. Thank you. Thank you. Mr. Northam. Good morning, Your Honor. I'm John Northam from Chapel Hill, North Carolina. I represent the debtor in this case. And just by way of brief background, because this really is a legal construction issue, but just to give you a little factual underpinning because you asked some of those questions. So this was an attorney who, for reasons unrelated to this particular loan, had to file an individual Chapter 11 case. And we filed that case to pay and restructure certain debts. One of the debts that he had at the time the petition was filed was bank loans from BB&T. Those loans were secured by real estate north of Chapel Hill. And there was no factual dispute as to what amount was owed as of the petition date. There was no dispute that the value of the real estate was a bit more than what was owed. So there was an over-secured creditor, but not by a huge equity cushion. And there was no dispute that at the time the petition was filed, there was no default. There was no payment default. There was no attorney fees that were accrued. There was simply principal and interest as of the petition date. So in the Chapter 11 plan, what we did after this was a long, this was the fifth amended plan. So we went through a lot of variations to try to subdivide and develop the real estate to pay people in full. Those were unsuccessful. So the plan that we ended up with was a liquidating plan, which provided a couple of things. With respect to this particular loan, which had been acquired by Summit Bridge from BB&T, they got the collateral back in satisfaction of their secured claim. So their secured claim was the amount that was owed as of the petition date, plus post-petition interest, charges, fees, or costs up to the value of the collateral. There was no dispute that that was their secured claim. And they got their real estate back in satisfaction of that secured claim. That was done expressly without prejudice to their right to assert the claim that's before the court today, which is that they incurred post-petition attorney fees, and they wanted to have an unsecured claim for that amount. Well, what do you do with the language that's in the promissory note that says, if there's no displacement of an attorney for collection, the undersigned agrees to pay in addition to principal and interest at all costs of collection, including the non-living to reason attorney's fees. How does that go? Does that just go away? Actually, it does. Once the petition is filed. This gets to the statutory construction that counsel was just talking to. When you go to Section 502, what you're entitled to under 502 is the court shall determine the amount of such claim as of the date of the filing. So the question is, what was owed as of the date of the filing? The bankruptcy code allows you a claim in that amount. And 502 then goes on to take some of that away from some people. All of these subsections that follow in 502B, each and every one of those reduces the amount of a potential claim. And this is consistent with the bankruptcy code's policy of trying to bring people down to a level playing field so that people share pro rata when there's a limited amount of assets. And that's the case here. The other assets that were in the estate are being liquidated. There will be distributions to unsecured creditors. And everybody will get so many cents on the dollar. Summit Bridge wants to participate in that pool to get a share of the money that would otherwise go to holders of unsecured claims. And that's the real rub here, is do you open the door and let them in for something that was not owed as of the petition date and therefore should not be allowed under 502B? So if you think about how 502B works, it says you're a creditor. What are you owed as of the petition date? And you say, I'm owed $1.8 million or thereabouts. That's my claim. And they say, okay, your claim's allowed at $1.8 million, period, unless it's further reduced. And it's further reduced because it's not enforceable or for its unmatured interest. And unmatured interest there reflects Congress's intent to disallow original issue discount obligations. That's something from the past that I don't see anymore in my practice. But that's the situation where someone does their loan in a fashion that they say, you owe me X dollars one year from now, but I'm only going to advance you part of that money. In effect, I'm prepaying the interest to myself. And Congress said, that's not okay. What would you be owed at the petition date if you treated this like a normal loan? You were advanced X dollars. You have interest at a particular interest rate. You wouldn't be owed the full balloon payment at the end. You'd only be owed what you had earned up to that date. 502B disallows other things, services for the insider or an attorney in excess of reasonable value. That's where Congress is saying, yeah, there might be an obligation here. The debtor might have agreed to pay his attorney $10,000 to prepare this contract for him, but it's too much. We're only going to allow that claim to the extent it's a reasonable value. So Congress walks right through a bunch of subsections to say, we're starting here, and then we're going to knock it down. And that is consistent throughout the code. The bankruptcy code over and over does that. But it doesn't, I don't understand it, but it doesn't exclude the thing that you say is excluded. I mean, I feel you could read that list the other way and say, look, when Congress meant to exclude something, it knew exactly how to do it. It talked about lawyers. It talked about unmatured claims. But it didn't exclude post-petition legal fees. It fixed it as of the petition date. 502 fixes the amount that's owed as of the petition date. But you have to determine the amount of such claim. If that were right, shouldn't travelers have been a really short decision? Shouldn't the Supreme Court just have said, of course you can't allow this. It doesn't get through 502B. I mean, they could have gone on to deal with attorney fees. That's not what I'm asking. They didn't, right. The decision that they issued, the entire back half of it, in your view, was entirely unnecessary, because below it wasn't fixed on the date of the petition. So my recollection is, and I could be wrong about this, my recollection is that travelers really was talking about someone trying to use the adequate protection provisions of Section 362 to get something that they otherwise couldn't get. That's not the way I read it. I thought they were just considering whether post-petition fees, the Ninth Circuit rule that said post-petition fees are not allowed if they were incurred on a bankruptcy matter. Oh, I'm sorry. I'm mistaken. Okay, okay. What they were dealing with there was the question of the FOB. And so that was an oddity. That was the only circuit around. I know, but can you see what I'm asking you is, wouldn't, if your reading of 502B is correct, it would have cut that decision off right at the knees. All you have to say is, well, obviously you can't recover it because it could be fixed at the date of. But they didn't do that. They said we don't see a problem with 502B. Well, what they said is that nobody had really raised that issue at the lower court. Did they not? No, no, but, okay. I believe that is. They said no one raised the precise issue in this case at the lower court. Right. The issue that was raised before the Supreme Court, your reasoning would apply equally to that issue. But as to that issue, the Supreme Court said we don't see a 502 problem. Well, my reading of that was that they looked at FOBian and said we fell under our own restrictive procedures that were bound to limit what was properly considered and were not going to leapfrog over the Court of Appeals when they didn't have this issue squarely presented. So I think everybody, all the bankruptcy petitioners in the country would say, I wish you'd gone ahead and answered the question. But I don't think they did for that particular reason. So if I go back to my statutory construction, if I'm right, and I believe that this is the better way to read the code, you look at what's owed as of the date the petition is filed. You only get to inclusion of post-petition interest, post-petition attorney fees, post-petition charges, if you are gifted that under 506B. 506 has its own discrete purpose because secured claims are treated differently in the bankruptcy code in any number of circumstances. How you use their collateral, what protection you have to give to them, their lien is preserved. So 506 addresses various aspects of that. First and foremost, it says we need the court to determine, is this creditor secured or not? Does he have a valid lien? And if he has a valid lien, is he oversecured or is he undersecured? And there are so many places in the bankruptcy code that that has a ripple effect. In this particular case, we're talking about interest. But if you have an undersecured creditor, there's a bifurcation of the claim that's split in half or split proportionally. So if someone is owed $1.8 million and their collateral is worth $1.5 million, they have a 1-5 secured claim and a $300,000 unsecured. They are grouped differently in the plans of reorganization as to classes. They vote differently. They have different required cram-down treatments. There's all kinds of places where that's important. What it says in 506B is that once you have made that determination and it starts off to the extent that an allowed secured claim is secured by this excess value, then that holder can get interest charges and fees to the extent of the extra value. Now, by my reading, if you fix somebody's claim at the petition date and they're oversecured, they have the ability to recover additional amounts. That's an additive provision. 502 had a starting point with a bunch of diminishing provisions, excluding provisions, limitations. 506B is the reverse. 506B says if you start out and you're oversecured, you can add to your claim. You can get interest. You can get attorney fees, but only to the extent of the lien value. And that's because Congress's intent throughout the code is to recognize and respect the validity of properly perfected liens under state law. So if you have that provision, if you say that the claim is secured and to that extent you get interest fees and costs, that's additive to me and is on top of what 502 provided. If you say the reverse, which is that under 502 you're entitled to the full amount, that's your claim. You have a contingent thing that's going to be liquidated at some point in the future. You don't really need 506B anymore because you would then say, okay, your claim is the full amount plus 15%, wouldn't you? And you would say under 506A we'll figure out what portion of that claim is secured and what portion of it is unsecured. You wouldn't need 506B at all. And so if you go that route, you have deleted 506B from the code, which I don't think we can do. So when we think about the argument, and let me talk one more second about the contingent claim argument. So bear in mind that that argument comes from the basic proposition, or I think I would characterize it this way, that 502B sets the claim and then says that it's disallowed if it's unenforceable other than for a reason because it's contingent or unmatured. There are provisions for contingent claims, and a good example of a contingent claim is someone who has a guarantee. So a company borrows money from the bank and the principal officer guarantees the loan. The bank has a claim against the debtor in the case for the amount that's owed as of the petition date. The bank can also sue the president. When the petition is filed, the president does not have any claim against the debtor for his guarantee because he hasn't paid anything out on it. It's an obligation that has zero dollar value to it. What the code provides, though, with dealing with co-makers and joint obligors, guarantors, is that if that individual is sued by the bank and has to pay the bank its claim, the bank's claim comes down by that amount and his claim goes up by that amount. There's no change to the other creditors in this case. The state's vulnerability to that exposure remains the same. It simply moves from one person to the other because the guarantor had to pay the bank's debt. You can't take that situation and layer it on top of this and say, well, it's a contingent claim because as of the petition date, there was an obligation to pay attorney fees. Because the cases in the other circuits, I mean, there's some circuits I can't distinguish them away. They just look at it differently. If I'm in that circuit, I lose. But there's language in some of those opinions that are the other circuit court opinions where they omit the reference to as of the date of the petition. Their language in the opinion describes fixing the amount of the claim and then jumps right on to but not disallowed because it's contingent. Or disallows unmatured interest but doesn't say anything about attorney fees. My argument at its strongest rests on the proposition that when you expressly say, in the plain language of the code, the amount shall be determined as of the petition date, you are stuck with that. You can probably explain this to me. Bankruptcy expertise. So what is the part, what is section C for, the part that says, sort of explains how bankruptcy courts can estimate an amount so that they can value it? Right. So 502C gets used in a number of different places in bankruptcy. Is there a reason it couldn't be used here? Can I think about that a second? It doesn't, well, I couldn't say there's not a reason it couldn't be used here. I couldn't say that. I would say that's not how it's intended to be used. How it is used in the case is there are claims that get filed that have, a great example of this would be a tort claim. So someone clearly has a claim. They clearly have been damaged pre-petition. They've been injured in an explosion or they have been damaged by a machine. And in that case, we don't know what the amount of that claimant's dollar amount of claim, the damages are until the case has been litigated. So the case, and I've had a case just like this. So as you're walking through the plan process and you're classifying predators and they're having to vote and their vote is weighted by the amount of their claim. So for me to get a plan confirmed for a class of unsecured predators has to vote on the plan because they're going to get paid less than in full. I have to have acceptances by a majority in number of the people that vote on the plan and two-thirds in the dollar amount. So in order to do that math, somebody has to determine by estimate what is that tort victim's damage claim probably going to be. And the court estimates that claim and that amount and then we calculate the votes. He voted for it. He voted against it. Did I get two-thirds of the dollar amount? So that's how that section is used in the code. Couldn't you do the same thing, though, with attorney's fees? If you, yes, is the answer. So that's why I couldn't say no to that first question because if you answer it and let me give you an example, I say it fits better. But, yeah, you certainly could estimate attorney's fees as part of a claim. It would be hard to do that, practically speaking, because so if I compare things for a second, if you had, in the case of a secured predator who's oversecured. Well, let me ask this.  Yeah, you're saying that it would be harder to do, but in some ways when you look at a tort claim, to take your example, and you're talking about damages for pain and suffering, those type things, that's harder to estimate. Yes. But you're telling me that the court does that. Yes. Attorney's fees, if you've got somebody handling a business situation like this and you've got an hourly fee and an estimated number of hours to handle the claim through bankruptcy or whatever comes up, wouldn't that be even easier to estimate? Possibly. I don't know that it would kind of depend on what you're comparing here. You know, if you were comparing a copyright infringement claim or a personal tort claim or, in this case, attorney's fees. Fair. So you could do it. One of the problems with this whole attorney fee argument is that these are fees that are varied according to whether you fight the plan or not, whether you argue about your claim, whether somebody objects to your claim, things that may or may not happen. So it's harder to estimate prospective fees in a bankruptcy case than it would be, what would you charge to do a transactional closing or something like that. I think that's true. But to go back, if you had an over-secured creditor who's entitled to their attorney fees and the plan is saying we're going to pay them in full at some point in time, then, yeah, I guess I would believe the court could roughly estimate that fees for purposes of determining was the plan feasible. Based on the code, we don't really have an argument about an over-secured creditor. We do not. No question about that.  I think the code is written clearly. I mean, I live in the code, so I think it's clear. Not everybody thinks the code is clear. People think the Uniform Commercial Code is not clear. I think it's perfectly clear. But you look at the language, and I think it says clearly what it meant to say, which is fix it at the petition date. And even if you fix it at the petition date, under a lot of circumstances, we're going to knock it down. Just like the code, if someone gets a security agreement to get a leg up on other creditors within three months before the petition date, that's enforceable under state law. It's knocked out as an avoidable preference. The payment that's made, there's nothing wrong with making a payment to someone you owe three months before the petition date, but the bankruptcy code calls it back. And the reason is the policy. Treat everybody the same. What's your argument under state law for why this is not an enforceable agreement? I'm just curious. So that didn't get reached by the bankruptcy judge, yes. That will still be there. Right. So the reason for that is there's a North Carolina statute provides, and a lot of states have this, that you give a written notice to the obligor, and he has five days to pay the obligation and avoid payment of any attorney fees if he complies. So that's the state law. And we said that when the petition was filed, it's not in default. No notice had or could have been given. A notice can be given post-petition, but in this case, the secured claim was satisfied by giving them the property, so there was nothing. They had been satisfied. That's the argument. That's definitely a by side argument. Thank you. Mr. Shuler. Your Honors, I'll just note that the appellee has put a lot of chips on this argument that the legal fee claim is extinguished on the petition date. And it's just surprising to me because nothing in 502B says that. There's no case that they've cited that supports that position. That position is contrary to a traveler's and all the circuit court decisions we've discussed. And it's not even what the lower courts here base their decisions on. So I'm surprised by that. It's really unfounded anywhere in law. Anything else? No, sir. All right. Thank you very much. Thank you.
judges: Henry F. Floyd, Pamela A. Harris, Donald C. Coggins Jr.